## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IVOCLAR VIVADENT AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1183-GMS-SRF |
| | ) | |
| 3M COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the Court in this patent case is defendant 3M Company's ("3M") motion to dismiss or transfer under the first-filed rule or, alternatively, under 28 U.S.C. § 1404(a). (D.I. 12)  Plaintiff Ivoclar Vivadent AG ("Ivoclar") opposes the motion. (D.I. 17)  For the reasons set forth below, I recommend that the Court grant the motion and transfer the present action to the District of Minnesota.

### II.    BACKGROUND

#### A.    The Parties and the Technology

Ivoclar is a dental products company headquartered in Liechtenstein and organized under the laws of Liechtenstein. (D.I. 1 at ¶ 1)  Ivoclar markets products throughout the United States through its wholly owned subsidiary, Ivoclar Vivadent, Inc. ("Ivoclar US"). (D.I. 14, Ex. A; D.I. 20 at ¶ 2)  Ivoclar US is a Delaware corporation with its principal place of business in Amherst, New York. (D.I. 1 at ¶ 1; D.I. 20 at ¶ 2)

On April 22, 1997, three inventors filed a patent application in the United States directed to a new method for filling cavities in teeth with a nanoparticle compound. (D.I. 18 at ¶ 3)  The

inventors subsequently assigned their entire right, title and interest in the patent application to Ivoclar on June 26, 1997. (*Id.*) The application issued as U.S. Patent No. 5,936,006 ("the '006 patent") on August 10, 1999. (D.I. 1 at ¶ 7)

3M is a multinational technology company incorporated in Delaware and based in St. Paul, Minnesota. (D.I. 15 at ¶ 2; D.I. 14, Ex. B at ¶ 1) 3M manufactures, markets and sells a line of restorative dental composites known as the 3M ESPE Filtek™ Supreme products ("the accused products"), which were developed in Minnesota. (D.I. 15 at ¶¶ 3-4) Sumitra Mitra, a former 3M scientist based in Minnesota, was primarily responsible for the technical development of the Filtek™ Supreme products. (*Id.* at ¶ 5) 3M distributes the Filtek™ Supreme products via distribution centers located throughout the United States, although none of the distribution centers are located in Delaware. (*Id.* at ¶ 12) The 3M ESPE division has no facilities, offices, employees or operations in Delaware, and no aspect of 3M's research, development, testing, manufacturing or training operations related to the Filtek™ Supreme products occurred in Delaware. (*Id.* at ¶¶ 8, 11)

### B.   Background of the Present Dispute

On October 13, 2011, Ivoclar sent a letter to 3M notifying 3M of the '006 patent and informing 3M that Ivoclar believed the '006 patent was infringed by 3M's Filtek™ dental filling compounds. (D.I. 16 at ¶ 2; D.I. 18 at ¶ 7) The parties engaged in further communications regarding the '006 patent over the following weeks and entered into a Confidential Disclosure Agreement ("CDA") on November 1, 2011. (D.I. 16 at ¶ 3; D.I. 18 at ¶¶ 8-10; D.I. 22 at ¶¶ 3-8) The CDA contained a covenant not to sue which provided that, for the duration of the agreement, Ivoclar would not bring a suit for infringement of the '006 patent and 3M would not seek a

2

declaratory judgment or allege invalidity of the '006 patent.  (D.I. 22 at ¶ 5)

During the November 1, 2011 meeting, Ivoclar disclosed that it had initiated a patent

infringement action against 3M in Germany based on the German counterpart to the '006 patent

(the "German Action").  (D.I. 18 at ¶ 9; D.I. 22 at ¶ 4)  Although the German complaint had been

filed, it had not yet been served because Ivoclar had not paid the service fee to the German court.

(D.I. 22 at ¶ 4)  Ivoclar represented that it would not pay the service fee or otherwise proceed

with service of the German complaint, triggering active litigation of the suit, while the parties

were engaged in settlement negotiations.  (*Id.* at ¶ 7)

As a result of the disclosure of the German Action, the parties modified the proposed

CDA with handwritten notes prior to the CDA's execution to include the language "with the

exception of proceedings filed but not served in the Courts of Germany."  (D.I. 18 at ¶¶ 9, 11;

D.I. 22 at ¶ 5)  According to 3M, this language was intended to "freeze" the German Action,

including it within the standstill agreement to bar Ivoclar from taking steps to serve the German

complaint.  (D.I. 22 at ¶ 6)  In contrast, Ivoclar construes the language to exclude the earlier filed

German Action against 3M from the covenant not to sue.  (D.I. 18 at ¶ 11)

On November 30, 2011, Ivoclar served its complaint on 3M in the German Action.  (D.I.

22 at ¶ 11)  On the same day, Ivoclar notified 3M by telephone and mailed notice that it intended

to terminate the CDA.  (D.I. 18 at ¶ 12; D.I. 19 at ¶¶ 2-3; D.I. 22 at ¶ 12)  Ivoclar also attempted

to hand deliver the required written notice of the termination on November 30, 2011, but security

guards at 3M turned the messenger away, preventing delivery of the termination notice on

November 30, 2011.  (D.I. 19 at ¶ 2)  On December 1, 2011, Ivoclar e-mailed notice of the

termination of the CDA to 3M.  (*Id.* at ¶ 4)

## C.      Procedural History

Viewing Ivoclar's service of the complaint in the German Action as a breach of the CDA,

3M filed a declaratory judgment action against Ivoclar and Ivoclar US on November 30, 2011 in

the United States District Court for the District of Minnesota (the "Minnesota Action"). (D.I. 22

at ¶ 11; D.I. 14, Ex. B)  The complaint in the Minnesota Action alleges causes of action for non-

infringement and invalidity of the '006 patent. (D.I. 14, Ex. B)  3M subsequently withdrew its

claims against Ivoclar US, but maintains its causes of action against Ivoclar. (D.I. 24 at 4)

On February 10, 2012, Ivoclar filed its amended motion to dismiss, contending that 3M's

complaint breached the covenant not to sue contained in the CDA. (D.I. 23, Ex. A)  On April 26,

2012, the District of Minnesota denied Ivoclar's motion to dismiss, concluding that dismissal is

not an appropriate remedy for breach of a temporary covenant not to sue under Minnesota law.

(D.I. 24)  Ivoclar filed its answer and counterclaim on May 10, 2012, alleging a cause of action

for infringement of the '006 patent.  (D. Minn. C.A. No. 11-3488-ADM-TNL, D.I. 33)[1]

Ivoclar filed its complaint in the District of Delaware on December 1, 2011, alleging

infringement of the '006 patent.  (D.I. 1)  3M filed the instant motion to dismiss or, in the

alternative, to transfer on February 6, 2012.  (D.I. 12)

## III.   LEGAL STANDARD

In patent cases, the Federal Circuit applies the rule favoring the forum of the first-filed

---

[1]On June 1, 2012, the court in the Minnesota Action denied Ivoclar's Motion to Stay the
Proceedings and set a pretrial scheduling conference for June 29, 2012.  (D. Minn. C.A. No. 11-
3488-ADM-TNL, D.I. 44, 45)

case, absent special circumstances, "as a principle of sound judicial administration."[2]  *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  Exceptions to the general rule are not rare if compelling reasons exist "that would make it unjust or inefficient to continue the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *rev'd on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995);[3] *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).

In determining whether an injustice would result from favoring the first-filed action, a district court may consider whether a party intended to preempt another's infringement suit by filing a declaratory action. *See Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).  However, the Federal Circuit has stressed that preemption is only one consideration in the analysis, and more is required to overcome the deference given to the first-filed action. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (concluding that the trial court must evaluate the "convenience factors" before transferring the case to another jurisdiction); *Elecs. for Imaging*, 394 F.3d at 1347-48. "The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the

---

[2]The application of the first-filed rule in patent cases impacts the Federal Circuit's mandate to promote national uniformity in patent practice; therefore, the Federal Circuit does not defer to the procedural rules of the regional circuits. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005); *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

[3]The Federal Circuit's decision in *Genentech* was overruled on the narrow question of whether a district court's decision to stay a declaratory judgment action in favor of parallel state court litigation should be reviewed *de novo*. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995). The Supreme Court did not overrule the Federal Circuit's analysis under the first-filed rule in *Genentech*.

first-filed action is a declaratory action." *Genentech*, 998 F.2d at 938.

Factors relating to judicial and litigant economy include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* Consideration of these factors mirrors the analysis performed by district courts in determining whether to transfer venue. "[W]hen the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a)." *Micron*, 518 F.3d at 904.

Performing an analysis of the judicial economy factors serves to "prevent[] multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Genentech*, 998 F.2d at 938 (internal quotations omitted). "[R]igid mechanical solution[s] to questions of forum" are disfavored, because strict adherence to the first-filed rule "will not always yield the most convenient and suitable forum." *Id.* (internal quotations omitted); *Micron*, 518 F.3d at 904. Instead, courts emphasize the importance of conservation of judicial resources. *See Genentech*, 998 F.2d at 938.

## IV.   DISCUSSION

### A.   Application of the First-Filed Rule

The parties agree that the Minnesota Action was filed before the Delaware Action and that the proceedings are mirror images of each other. 3M withdrew its claims against Ivoclar US in the Minnesota Action, and the Minnesota court dismissed those claims without prejudice, leaving Ivoclar and 3M as the only remaining parties in both proceedings. (D.I. 24 at 4) Moreover, sufficient identity exists between the causes of action alleged in both proceedings.

6

The complaint brought by 3M in the Minnesota Action seeks a declaratory judgment for noninfringement and invalidity of the '006 patent. Ivoclar brought a counterclaim for infringement of the '006 patent in the Minnesota Action, which constitutes a mirror-image of Ivoclar's complaint in the Delaware Action asserting a cause of action for infringement of the '006 patent. (D.I. 1 at 2-5; D. Minn. C.A. No. 11-3488, D.I. 33 at 5-8) The parties' dispute therefore centers on whether any exceptions to the first-filed rule apply.

**B.     Jurisdiction of the Later-Filed Court to Perform the First-Filed Analysis**

Before reaching an analysis of the exceptions to the first-filed rule, the Court will address 3M's contentions that this Court must defer to the Minnesota court for the remainder of the analysis. The Court acknowledges the existence of conflicting case law regarding whether a later-filed court may perform the remainder of the first-filed analysis, or whether such an analysis must be left to the first-filed court.[4] For the reasons set forth below, the Court concludes that it may properly conduct the remainder of the first-filed analysis in view of the facts before it.

Citing *Micron*, in addition to several unpublished decisions from the Northern District of California, the District of Arizona and this district,[5] 3M contends that determining whether an

---

[4]*Compare E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (holding that later-filed court did not abuse its discretion by performing first-filed rule analysis and determining that exception to first-filed rule applied) *and Sealing Sys., Inc. v. Adaptor, Inc.*, 2010 WL 3000036, at *2-3 (D. Minn. July 22, 2010) (conducting a first-filed analysis in a patent case as the later-filed court, and determining that transfer to the first-filed court was warranted), *with Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 556 n.4 (S.D.N.Y. 2000) ("Indeed, it is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies.") *and Microchip Tech. Inc. v. United Module Corp.*, 2011 WL 2669627, at *7 (N.D. Cal. July 7, 2011) (applying *Micron* and holding that "convenience arguments under 1404(a) should be addressed to the court in the first-filed action").

[5]*See Microchip Tech. Inc. v. United Module Corp.*, 2011 WL 2669627, at *7 (N.D. Cal. July 7, 2011); *Mechoshade Sys., Inc. v. Draper, Inc.*, 2011 WL 1576092, at *4 (D. Ariz. Apr. 27, 2011);

exception to the first-filed rule applies "is a task for the court in the **first-filed action**." (D.I. 13 at 6) (emphasis in original). According to 3M, it would be presumptuous for the later-filed court to determine if an exception to the first-filed rule applies. (*Id.* at 7) Moreover, 3M contends that Ivoclar already raised its opposition to the application of the first-filed rule in the Minnesota Action by way of its motion to dismiss, and it would be inappropriate for this Court to duplicate the Minnesota court's analysis of the CDA under Minnesota law. (D.I. 21 at 2) In response, Ivoclar contends that the first-filed rule does not apply to the Delaware Action because the Minnesota Action was contractually barred. (D.I. 17 at 5)

The parties cite no authority, and the Court has found none, in which the Federal Circuit expressly addresses the issue of whether a later-filed court may properly determine whether an exception to the first-filed rule applies. Contrary to 3M's contentions, the Court does not find the Federal Circuit's decision in *Micron* to be controlling on this point. The portion of *Micron* cited by 3M states that "[d]istrict courts, typically the ones where declaratory judgment actions are filed . . . will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed." *Micron*, 518 F.3d at 904. This Court declines to imply from the foregoing statement that the Federal Circuit intended to establish a bright line rule precluding a later-filed court from performing the first-filed analysis under any set of circumstances.

Nor does the Court find 3M's reliance on this Court's decision in *Bank of America* to be compelling. Although the Court in *Bank of America* ultimately deferred to the first-filed Florida

---

*StemCells, Inc. v. Neuralstem, Inc.*, 2008 WL 2622831, at *4 (N.D. Cal. July 1, 2008); *Bank of America, N.A. v. S.I.P. Assets, LLC*, 2007 WL 2698192, at *3 (D. Del. Sept. 11, 2007).

court's jurisdiction on the issue of whether the Florida court had jurisdiction over a party, the

Court went on to determine that the case should be transferred "[g]iven . . . the interests of justice

and judicial administration, as well as the practical considerations contemplated by the *Jumara*

factors." *Bank of Am., N.A. v. S.I.P. Assets, LLC*, 2007 WL 2698192, at *4 (D. Del. Sept. 11,

2007). This statement suggests that, although the Court did not conduct a lengthy analysis, it

considered each part of the first-filed analysis.

The facts set forth in *Bank of America* are also distinguishable from the circumstances set

forth in the present matter because a motion to transfer venue was simultaneously pending in the

Florida court in that case. *Id.* at *3. In determining that deference to the first-filed court was

warranted, the Court in *Bank of America* cited case law reasoning that, "[a]bsent such a rule,

there exists the possibility of inconsistent rulings on discretionary matters as well as duplication

of judicial effort." *Donaldson, Lufkin & Jenrette, Inc. v. L.A. County*, 542 F. Supp. 1317, 1321

(S.D.N.Y. 1982). The risk of inconsistent judgments will also arise in this case if the parties

continue on the present course of parallel litigation, and the expense and inconvenience

associated with litigating in two jurisdictions warrants application of the first-filed rule.

However, the risk of inconsistent rulings does not bar this Court from conducting the first-filed

analysis in the instant matter because, as the Minnesota court expressly acknowledged in its April

26, 2012 decision, no motion to transfer is pending in the Minnesota Action.[6] (D.I. 24 at 9)

---

[6]The issue before the Minnesota court was whether an alleged breach of the standstill agreement warranted dismissal of the case. The Minnesota court determined that an alleged breach of a temporary covenant not to sue was distinguishable from the release of a claim; therefore, it was not a bar to the action requiring dismissal. *3M Co. v. Ivoclar Vivadent AG*, 2012 WL 1438989, at *3-4 (D. Minn. Apr. 26, 2012). Moreover, the Minnesota court found that compelling specific performance of a temporary covenant not to sue by dismissing the action would be "unwarranted." *Id.* at *5. Thus, the Minnesota court issued its decision without reaching the issue of whether the

Moreover, other decisions from this Court and the Third Circuit suggest that a later-filed court may properly conduct a complete analysis of the first-filed rule. In *E.E.O.C. v. University of Pennsylvania*, the Third Circuit held that the district court did not abuse its discretion by declining to dismiss the later-filed action after determining that an exception to the first-filed rule should be recognized. 850 F.2d 696, 972 (3d Cir. 1988); *see also Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623-24 (W.D. Pa. 2009) (later-filed court conducted an analysis of the "anticipatory suit" exception to the first-filed rule). More recently, in *Fuisz Pharma LLC v. Theranos, Inc.*, this Court conducted a complete analysis of the *Jumara* factors as the later-filed court in a patent case, ultimately recommending that the action be transferred to California after concluding that the first-filed rule should apply. C.A. No. 11-1061-SLR-CJB, 2012 WL 1820642, at *19 (D. Del. May 18, 2012).

The remaining cases cited by 3M in support of its argument are unpublished decisions from other jurisdictions which do not control. As the Federal Circuit has not addressed the issue, and long-standing Third Circuit case law as well as recent case law from this district support the view that a later-filed court may conduct a complete analysis under the first-filed rule, the Court will conduct the remainder of the first-filed analysis.

## C.    Exceptions to the First-Filed Rule

Ivoclar contends that an exception to the first-filed rule applies in the instant case because 3M preemptively filed its declaratory judgment action in Minnesota with the intent to dictate

CDA had actually been breached. The Minnesota court noted that the true purpose of Ivoclar's motion to dismiss was to determine venue and concluded that "[o]ther remedies, such as a motion to transfer venue, exist to correct an improper venue." *Id.* Ivoclar did not pursue a motion to transfer in Minnesota, and does not contend that Minnesota lacks jurisdiction, as evidenced by Ivoclar's abandonment of its challenge to personal jurisdiction. *Id.*; *see also* 28 U.S.C. § 1404(a).

venue prior to the formal termination of the CDA. (D.I. 17 at 5-6) According to Ivoclar, 3M should have either waited to receive written notice of the termination on December 1, 2011 or provided its own written notice of termination prior to filing the Minnesota Action. (*Id.* at 5) Ivoclar contends that it would be particularly unjust to uphold the first-filed rule in this instance because 3M initiated the Minnesota Action in violation of the CDA's standstill agreement. (*Id.* at 6-7)

In response, 3M contends that Ivoclar first breached the CDA by serving the complaint in the German Action on November 30, 2011, thereby necessitating 3M to assert its rights by filing for a declaratory judgment in the Minnesota Action. (D.I. 21 at 3-6) 3M alleges that Ivoclar's interpretation of the CDA's covenant not to sue to exclude the German Action is incorrect because: (1) it contradicts statements made by an Ivoclar representative promising not to serve the German complaint while the CDA was in effect; (2) it is illogical as a matter of contract interpretation because the German Action was not covered under the original language of the CDA; and (3) Ivoclar filed the Delaware Action before a written termination notice was delivered. (*Id.* at 7-8)

I find that 3M's filing of the Minnesota Action was neither preemptive nor in breach of the CDA's standstill provision, and therefore, the first-filed rule should apply. Ivoclar's interpretation of the CDA is not persuasive because the inclusion of the additional language in the handwritten addendum would be unnecessary if the agreement were to have no effect on the German Action. In other words, there is no point to carving out of a standstill agreement litigation which had already been initiated and, thus, was not subject to the CDA. Ivoclar's representative acknowledges in the Hartnett Declaration that "[the German] case was already

commenced, therefore it was excluded." (D.I. 18 at ¶ 11)  Moreover, the most reasonable interpretation of the "filed but not served" language of the addendum is to ensure that the German Action would remain inactive, consistent with the purpose of achieving a standstill of all litigation concerning the '006 patent.  Otherwise, it is unnecessary to refer to the status of service of process in the addendum.

In light of my interpretation of the standstill agreement, it follows that Ivoclar breached the CDA prior to 3M's initiation of the Minnesota Action by serving the complaint in the German Action on the morning of November 30, 2011.  Ivoclar's breach excused 3M from further performance under the CDA pursuant to Minnesota law.  *See Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, 793 N.W.2d 437, 441 (Minn. Ct. App. 2010) ("[I]t is elementary that a breach of a contract by one party excuses performance by the other.").  As a result, 3M's declaratory judgment complaint was neither preemptive nor filed in violation of the CDA.

Ivoclar analogizes the facts of this case to the situation before the Court in *Extricom Ltd. v. Meru Networks, Inc.*, which also addressed the issue of transfer in the context of a standstill agreement.  (D.I. 17, Ex. A)  In *Extricom*, the Court denied transfer because the Delaware action was the first-filed action, it was filed after the expiration of the standstill agreement, and the California court had previously granted a motion to dismiss, transfer or stay the California action in favor of the Delaware action.  (*Id.*)  None of these circumstances is present in the action currently before the Court.

Even if the Court were to find that 3M's declaratory judgment action preempted Ivoclar's action for infringement, thereby giving rise to an exception to the first-filed rule, this finding alone would not be sufficient to establish cause for maintaining the later-filed Delaware Action.

Rather, Ivoclar would then be obligated to show that the balance of convenience weighs in its favor. *See Genentech*, 998 F.2d at 938 (reversing district court's decision to dismiss a declaratory action based solely on the fact that the suit was designed to anticipate a later-filed complaint in another forum, despite the fact that sound reasons existed for bringing the action in the first-filed forum); *Serco Servs.*, 51 F.3d at 1039-40 (dismissing declaratory action as anticipatory in view of factors such as location of witnesses and documents). In my view, the convenience factors also weigh in favor of granting 3M's motion for the reasons discussed *infra*.

###    D.    Transfer Analysis

Having determined that the application of the first-filed rule is warranted and that Ivoclar has failed to demonstrate an exception to the rule, the Court must next consider whether to recommend dismissal or transfer of the instant action based on an analysis under Section 1404(a).[7] 3M seeks dismissal of the case, or, in the alternative, asks that the Delaware Action be transferred to the District of Minnesota. (D.I. 13) Ivoclar contends that the results of the transfer analysis weigh in favor of Delaware as the most suitable forum to address the challenges to the '006 patent. (D.I. 17 at 13)

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Third Circuit has explained that § 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in

---

[7] 3M seeks either dismissal or, in the alternative, transfer of the Delaware Action, but does not request a stay.

favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).[8]

A plaintiff's choice of forum should not be lightly disturbed, and the defendant bears the burden of establishing that the balance of convenience and fairness strongly favors the defendant. *See Jumara*, 55 F.3d at 879-80; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). As such, "a transfer is not to be liberally granted." *Shutte*, 431 F.2d at 25. In fact, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010).

The transfer analysis may also be influenced by the prior filing of a related case in the proposed transferee court. *See Fuisz Pharma LLC v. Theranos, Inc.*, 2012 WL 1820642, at *10 (D. Del. May 18, 2012). "A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004) (internal citations omitted). Transfer is appropriate "in the interests of justice" when related litigation in a transferee forum involves the same parties, technologies and prior art. *See Mallinckrodt Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 357-58 (D. Del. 2009).

### 1.    Appropriateness of the transferee venue

To determine whether transfer is appropriate, the Court must first determine whether the action could have been brought in the proposed transferee venue. "The party moving for transfer

---

[8]A district court's ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a) in a patent case is governed by the law of the regional circuit. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011).

bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt*, 670 F. Supp. 2d at 356 (internal citations and quotations omitted). The parties do not dispute that this action could have been brought in the District of Minnesota. Accordingly, the first requirement in the analysis for transfer of venue under § 1404(a) is satisfied.

### 2.   *Jumara* factors

Although the Third Circuit does not adhere to a "definitive formula or list of the factors to consider," courts within the Third Circuit apply the private and public interests set forth in *Jumara* to determine whether transfer is warranted. *Jumara*, 55 F.3d at 879. The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* The Federal Circuit requires district courts to expressly consider each of the *Jumara* factors to the extent that those factors are disputed. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).

(a)     **Private interest factors**

(i)     **Plaintiff's choice of forum**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal citations and quotations omitted). A plaintiff's choice of forum will receive deference as long as the plaintiff has "some legitimate reason" for selecting the forum. *Cypress Semiconductor Corp.*, 2001 WL 1617186, at *2 (internal citations omitted). Although the Third Circuit has stressed the importance of this factor, the Federal Circuit has stated that it should not be "effectively dispositive" of the transfer analysis. *In re Link_a_Media*, 662 F.3d at 1223.

When a plaintiff initiates a lawsuit in a venue that is not its home forum, the plaintiff's choice of forum is afforded less deference. *Id.*; *see also Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986) ("A defendant's burden with respect to plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit on its 'home turf.'"). A corporation's home forum is generally construed as its principal place of business. *See Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009). Some cases in this District support the proposition that a plaintiff's home turf also includes its state of incorporation. *See Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1-2 (D. Del. Apr. 24, 2004) ("By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' 'home turf.'").

The Federal Circuit recently cautioned against according too much weight to the

16

plaintiff's choice of forum in situations where the plaintiff does not choose to bring suit on its home turf. *See In re Link_A_Media*, 662 F.3d at 1223. The Federal Circuit suggested that "heavy reliance" on a defendant's state of incorporation is "similarly inappropriate." *Id.*

3M contends that Ivoclar's choice of forum is neutral because Delaware is not Ivoclar's home forum, and 3M's status as a Delaware corporation has no bearing on the transfer analysis. (D.I. 13 at 10-11) In response, Ivoclar contends that, while a defendant's state of incorporation is not dispositive, this does not mean that it should not be considered at all. (D.I. 17 at 7) Moreover, Ivoclar contends that Ivoclar US, its operating affiliate, is a Delaware corporation.[9] (*Id.* at 8)

Although Third Circuit precedent emphasizes that a plaintiff's choice of forum "is a paramount consideration," Ivoclar's choice of forum is entitled to less deference because Delaware is not Ivoclar's "home turf." *See Shutte*, 431 F.2d at 25; *Pennwalt*, 659 F. Supp. at 289. Specifically, Ivoclar does not maintain any offices in Delaware and is not a Delaware corporation. Recently, however, this Court has acknowledged that a foreign plaintiff's choice of a Delaware forum should not be lightly set aside, stating as follows: "Although [plaintiff] is a foreign corporation with no particular relationship to any domestic locale, the court declines to disregard the privilege of choosing a venue that has historically been accorded plaintiffs." *Cellectis S.A. v. Precision Biosciences, Inc.*, 2012 WL 1556489, at *5 (D. Del. May 3, 2012). This factor weighs slightly against transfer.

---

[9]As 3M points out in its reply brief (D.I. 21 at 9), the state of incorporation of an operating subsidiary who is not a party to the litigation is irrelevant to the transfer analysis. *See Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993) (concluding that plaintiff's attempt to bootstrap its position by referencing its connections with a non-party subsidiary were misguided). Ivoclar cites no authority in support of its contentions to the contrary.

### (ii)    Defendant's forum preference

3M's forum preference is the District of Minnesota, where it maintains its principal place of business and where most of its employees are located. (D.I. 13 at 12) Ivoclar does not refute this assertion. This factor weighs in favor of transfer.

### (iii)    Location of operative events

"[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis*, 2012 WL 1556489, at *5 (quoting 35 U.S.C. § 271(a)). "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Citing this Court's decision in *Angiodynamics*, 3M contends that this factor weighs strongly in favor of transfer because Ivoclar has asserted claims for indirect infringement. According to 3M, the location of the defendant's activities which constitute the alleged indirect infringement should control this inquiry. (D.I. 13 at 12-13) In response, Ivoclar contends that 3M sold nearly $10 million worth of the accused products in the mid-Atlantic region, and Ivoclar likewise sold millions of dollars worth of dental filling products in the region. (D.I. 17 at 11; D.I. 20 at ¶¶ 9-10)

The accused products in this case are sold nationwide, including in Delaware and Minnesota. By offering to sell or selling any of the accused products in Delaware, 3M's actions give rise to claims for direct infringement. Ivoclar also claims that 3M induced infringement in this region, causing Ivoclar to lose sales in the region. (D.I. 17 at 11) Evidence regarding

whether the infringement was induced in Delaware is contested and the record is not fully developed on this point.

Although Delaware has no other connection to the operative events, the District of Minnesota does, as there is evidence that the research and development of the accused products occurred in Minnesota. This Court recognizes that, "[t]o some extent, the claims ar[i]se where the allegedly infringed products [a]re designed and manufactured." *Wacoh Co. v. Kionix Inc.*, 2012 WL 70673, at *4 (D. Del. Jan. 9, 2012). Therefore, this factor weighs in favor of transfer.

### (iv)    Convenience of the parties

In assessing "the convenience of the parties as indicated by their relative physical and financial condition," *Jumara*, 55 F.3d at 879, the Court has traditionally examined a number of factors, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal," *Fuisz*, 2012 WL 1820642, at *12; *see also L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 595 (D. Del. 2008) (concluding that this factor weighed in favor of defendants, who had no offices or employees in Delaware).

3M contends that Minnesota is the more convenient forum because 3M's employees and representatives who plan to attend trial work at 3M's headquarters in Minnesota. (D.I. 13 at 13-14) According to 3M, litigating in Minnesota will not be any less convenient than litigating in Delaware for Ivoclar because Ivoclar is based in Liechtenstein and has no offices in Delaware. (*Id.* at 14) 3M observes that, regardless of whether the case proceeds in Minnesota or Delaware, many of Ivoclar's representatives will need to take a transatlantic flight to attend trial. (*Id.*)

19

In response, Ivoclar argues that it is inconvenient for its European and domestic witnesses to travel to Minnesota for participation in the litigation, because travel to Philadelphia would be a shorter distance. (D.I. 17 at 9) Despite the technical accuracy of Ivoclar's assertion, the Court finds that the added distance from Philadelphia to Minneapolis does not reach the level of inconvenience contemplated in the *Jumara* analysis.

Both Ivoclar and 3M are large corporations selling millions of dollars of dental products internationally. The Court is not convinced that litigating in either forum would impose an undue financial burden on either of the parties. *See Cypress Semiconductor Corp.*, 2001 WL 1617186, at *4 ("[C]onvenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in [the proposed transferee forum] regardless of the trial venue.").[10] This factor is neutral.

---

[10] 3M's allegations of inconvenience are also contradicted by the fact that it voluntarily chose to incorporate in Delaware. *See Mallinckrodt*, 670 F. Supp. 2d at 357 (internal citations omitted) ("[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware."); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572-73 (D. Del. 2001) ("[A]s the judges of this court have noted, one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute." Thus, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."). This Court does not interpret the Federal Circuit's decision in *In re Link_A_Media* as precluding any consideration of a defendant's Delaware corporate status. Furthermore, it has been recently noted in this Court that a defendant's incorporation in Delaware has some bearing on several *Jumara* factors. *See Helicos Biosciences Corp. v. Illumina, Inc.*, 2012 WL 1556390, at *3, 5 (D. Del. May 3, 2012); *see also Fuisz Pharma LLC v. Theranos, Inc.*, 2012 WL 1820642, at *13 n.16 (D. Del. May 18, 2012). However, in light of the fact that 3M is based in Minnesota, and Ivoclar has no strong connection to Delaware, the Court finds that this factor remains neutral.

### (v)     Convenience for the witnesses

The next factor in the *Jumara* analysis is "the convenience of the witnesses – but only to

the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55

F.3d at 879. Courts consider this factor to be particularly important in reviewing a motion to

transfer, "as it can be relevant to protecting a defendant's opportunity to put on its case with

witnesses who will appear in person at the trial." *ADE Corp.*, 138 F. Supp. 2d at 569. The

weight to be accorded to this factor varies depending on the type of witness at issue:

> Party witnesses or witnesses who are employed by a party carry no weight in the
> "balance of convenience" analysis since each party is able, indeed, obligated to
> procure the attendance of its own employees for trial. Expert witnesses or
> witnesses who are retained by a party to testify carry little weight in determining
> where the "balance of convenience" lies (especially in an action for patent
> infringement) because they are usually selected [on the basis] of their reputation
> and special knowledge without regard to their residences and are presumably well
> compensated for their attendance, labor and inconvenience, if any. Fact witnesses
> who possess first-hand knowledge of the events giving rise to the lawsuit,
> however, have traditionally weighed quite heavily in the "balance of convenience"
> analysis.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (internal citations and

quotations omitted). The practical impact of this factor is limited by the fact that few civil cases

proceed to trial, and at trial, few fact witnesses testify live. *Cellectis*, 2012 WL 1556489, at *6 &

n.6; *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, at *10 (D. Del. Jan. 24,

2012). The Court has also observed that former colleagues of a party's representatives would be

expected to voluntarily testify on behalf of the party, and absent concrete evidence that these

individuals would be unlikely to testify, this factor should remain neutral. *Tessera, Inc. v. Sony*

*Elecs. Inc.*, 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012) (concluding that "the better

approach is to recognize that witnesses have and will appear here without having to be

subpoenaed," absent evidence to the contrary).

3M contends that this factor weighs strongly in favor of transfer because several important non-party witnesses reside in Minnesota. (D.I. 13 at 14) Specifically, 3M notes that Sumitra Mitra, a former employee who resides in Minnesota, played a substantial role in the development in the accused products and will likely be called at trial. (*Id.*) 3M also refers generally to several non-party advertising agencies and public relations firms that have been involved in marketing the accused products. (*Id.* at 14-15) In response, Ivoclar contends that Delaware is a more convenient forum for its witnesses, many of whom will travel from Liechtenstein, and the remainder of whom will likely travel from New York. (D.I. 17 at 9)

The Court finds that this factor does not weigh in favor of either party. Ivoclar does not identify with specificity any potential witnesses who are not employed by Ivoclar. This Court has noted that a party "is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix*, 28 F. Supp. 2d at 203. 3M identifies a former employee who was heavily involved in the development of the accused products, but "former colleagues or business associates . . . might well be expected to voluntarily testify on behalf of the parties," and 3M has failed to show otherwise in this case. *Tessera*, 2012 WL 1107706, at *6. In sum, neither party has presented evidence that any of the witnesses would be unwilling or unable to testify at trial, as required under *Jumara*. This factor is neutral.

### (vi)    Location of relevant evidence

Third Circuit precedent advises that, while the location of books and records should be evaluated, it is not a determinative factor unless "the files c[an] not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence

22

usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of a transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation and quotation marks omitted).[11] This factor is accorded little weight due to technological advances that have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor*, 2001 WL 1617186, at *3 (internal quotation marks and citations omitted); *see also ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles."). However, a court must not ignore this factor entirely. *See In re Link_a_Media*, 662 F.3d at 1224.

3M contends that this factor weighs heavily in favor of transfer because all of its relevant books and records are located in Minnesota, and Ivoclar likely has no relevant books and records in Delaware. (D.I. 13 at 15) Ivoclar responds that, regardless of where the case proceeds, 3M will produce its documents electronically. (D.I. 17 at 10) 3M does not address Ivoclar's contentions on this point in its reply. (D.I. 21)

---

[11] A district court's ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a) in a patent case is governed by the law of the regional circuit. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011). The Federal Circuit in *In re Link_A_Media* stressed the importance of addressing the location of books and records factor under *Jumara*. *In re Link_A_Media*, 662 F.3d at 1224 ("While advances in technology may alter the weight given these factors, it is improper to ignore them entirely."). Therefore, the place where a defendant's documents are kept in a patent infringement case should only be considered to the extent that those documents cannot be produced in the alternative forum. *See Jumara*, 55 F.3d at 879 (limiting consideration of this factor "to the extent that the files could not be produced in the alternative forum").

Neither party alleges that it would be unable to produce any relevant books and records in either forum, as required by *Jumara*. 3M does not deny that it will produce all relevant records electronically regardless of where the case proceeds. However, the bulk of the evidence will likely come from 3M as the accused infringer. Moreover, most of the relevant documents will likely be produced in the Minnesota Action, and it would be impractical to require production of the same documents in both the Minnesota and Delaware Actions. *See Fuisz*, 2012 WL 1820642, at *16 ("[T]here would be some obvious logistical and practical synergies in having those documents utilized in one district, not two, were this case to be transferred to the Northern District."). This factor weighs slightly in favor of transfer.

### (b)    Public interest factors

#### (i)    Enforceability of judgment

The parties do not dispute that a judgment against 3M or Ivoclar would be enforceable regardless of where the case proceeds. This factor is neutral.

#### (ii)    Practical considerations

3M contends that the "practical considerations that could make trial easy, expeditious, or inexpensive" weigh in favor of transfer due to the existence of the Minnesota Action. (D.I. 13 at 16) Ivoclar responds that 3M's contentions on this point are "rather ridiculous" because only one of the actions will proceed to discovery and trial. (D.I. 17 at 12)

In analyzing this factor, the Court considers the existence of related lawsuits in another forum to be an important "practical consideration." *Altera*, 2012 WL 297720, at *12. As previously discussed, the Minnesota Action is the mirror image of the Delaware Action. All indications suggest that the Minnesota Action will go forward, as the Minnesota court has

considered and denied Ivoclar's motion to dismiss and Ivoclar has filed its answer and counterclaim in that proceeding.[12] Litigating the same issues in Delaware would not promote efficiency and would result in the prospect of inconsistent judgments. This factor weighs in favor of transfer.

### (iii) Administrative difficulties in getting case to trial

The parties do not dispute that the "administrative difficulties posed by the relative congestion of the two dockets in the respective fora" is a neutral factor. Statistics provided by the Administrative Office of the United States Courts for the year ending June 30, 2011 indicate that the median time to trial for civil cases has been 29.9 months in the District of Delaware and 21.1 months in the District of Minnesota. (D.I. 14, Ex. D) Since the issuance of those statistics, the judicial vacancy on this Court and a third Magistrate Judge position have been filled, and as a result, any disparities regarding court congestion will likely only lessen in the future. *Altera*, 2012 WL 297720, at *12. This factor is neutral.

### (iv) Local interests in dispute

This Court has previously held that "patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Neither party contends that this factor weighs either in favor of or against transfer. This factor is neutral.

---

[12]The Minnesota court also recently denied Ivoclar's motion to stay the Minnesota Action pending this Court's decision on the instant motion to transfer, and the Minnesota Action is set for a scheduling conference on June 29, 2012. In light of these recent events, application of the first-filed rule is certainly warranted because continuing on the present course of parallel litigation carries a substantial risk of inconsistent judgments, in addition to the obvious drawbacks of incurring the expense and inconvenience associated with litigating in two jurisdictions.

(v)     **Public policy**

The parties agree that the public policies of the two fora are insignificant because this is a patent case that implicates federal law and national public policies. This factor is neutral.

(vi)    **Judges' familiarity with state law in diversity cases**

The Court's familiarity with applicable state law is irrelevant because this is not a diversity case. "[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotations omitted). This factor is neutral.

(c)     **Other considerations raised by the parties**

In its answering brief, Ivoclar sets forth a separate subsection noting that 3M has itself filed patent infringement actions in Delaware, undermining its contentions that Delaware is an inconvenient forum. (D.I. 17 at 11)  3M replies that its litigation history is irrelevant to the *Jumara* analysis and should not be considered by the Court. (D.I. 21 at 8-9)  According to 3M, Delaware is not an inconvenient forum for all cases, but it is in this instance due to the specific facts of the case. (*Id.* at 9)

The Court notes that the parties' prior litigation history is not listed among the *Jumara* factors, and neither the Third Circuit nor this Court has otherwise identified it as a factor that would tip the scales in favor of transfer. As such, the Court makes no finding on this issue.

3.     **Weighing the balance of factors**

3M has met its burden of persuading the Court that the balance of convenience favors transferring the case to the District of Minnesota. Ivoclar's choice of forum weighs only slightly against transfer because Ivoclar did not initiate the lawsuit on its home turf. 3M's choice of

26

forum, the location of operative events, the location of books and records, and practical considerations, particularly the progress of the related litigation in Minnesota, tip the scales in favor of transfer.  The remaining factors are undisputed or neutral.  After considering each of the *Jumara* factors, I find that the balance of factors weighs in favor of transfer.

## V.   CONCLUSION

For the foregoing reasons, I recommend that the Court grant 3M's motion and transfer this matter to the District of Minnesota.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non Pro Se matters for Objections filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: June 22, 2012

UNITED STATES MAGISTRATE JUDGE

27